Rafe BLANKENSHIP, Appellee,

v.

Curtis BLANKENSHIP, Mary S. Blankenship, Joe C. Blankenship, Maxine S. Blankenship, and James C. Johnson, and wife, Lynda Diane Johnson, Appellants.

Court of Appeals of Tennessee,
Western Section, at Jackson.

June 14, 1983.

Application for Permission to Appeal
Denied by Supreme Court
Aug. 29, 1983.

Michael R. Lipscomb, Henderson, for appellee.

John Van Den Bosch, Jr., Jackson, for appellants.

CRAWFORD, Judge.

This case involves a boundary line dispute over two separate parcels of property. Plaintiffs' complaint prayed for: (1) an injunction to prevent the defendants from trespassing; (2) a declaration that plaintiffs are owners in fee simple of the disputed properties; and (3) damages for timber cut by defendants. Defendants' answer denied the material allegations of the complaint and contended that plaintiffs should be estopped from claiming title to the property because defendants had "open, notorious and hostile possession under color of title" for a period of more than twenty years. The Chancellor made no written findings of fact, but entered a decree declaring that plaintiffs had carried the burden of proof, and that the two parcels of disputed property were owned by plaintiffs. The decree further provided that damages for the timber cut had not been proven, and entered judgment for the defendants. The defendants have appealed the ruling of the Chancellor concerning the title to the disputed parcels of property presenting a single issue for review as to each parcel. We will consider the matter as to each parcel separately and will use the designation of the parcels used by the parties, namely the Southern Disputed Tract and the Northern Disputed Tract.

I.

SOUTHERN DISPUTED TRACT

1. Whether the Chancellor erred in failing to find that the defendants were entitled to the disputed tract of land by adverse possession.

(a) May defendants rely on earlier parol agreement to assert adverse possession?

Plaintiff Rafe Blankenship and defendant Curtis Blankenship are brothers, and the property in which the disputed area is located was owned by the brothers as joint tenants. In 1936 they decided to divide the land, and Curtis contends that they agreed that Rafe would take the northern part of the land while Curtis would take the southern part with the dividing line being Beach Bluff Road, a thoroughfare which ran generally east and west across the land and separated the northern tract from the southern. Rafe contends that while Beach Bluff Road does constitute a boundary for some of their property, it was not intended to be the boundary except as established by the description in the deed. At the extreme eastern end of the property, Beach Bluff Road made a slight curve toward the north creating the .45 acre in dispute.

The defendants, Curtis Blankenship and wife, and Joe Blankenship and wife, have residences that are located south of Beach Bluff Road, and they introduced proof that they cultivated this disputed parcel, used fertilizer to build up the land, gave dirt away to the road department from the land, and, in general, considered all the land south of Beach Bluff Road to be theirs. On the other hand, Rafe Blankenship, who, along with his wife, has a residence located almost directly across Beach Bluff Road from the disputed area, introduced proof to show that he had considered this property to be his, that he used his farming equipment on the property to make an area for horseback riding which he used frequently, that he gave permission to others to use the property, and that on one occasion when a third person asked about the ownership of

the property, Curtis replied that the property was Rafe's.

Both sides employed surveyors who surveyed the respective properties and the disputed tracts. The deed by which Rafe Blankenship and wife obtained title was platted out by a surveyor who testified that the disputed area was within the description called for in the deed. This deed from Curtis to Rafe does not mention Beach Bluff Road or any road as a boundary line. No deed was platted out for Curtis Blankenship and Joe Blankenship which would include the disputed .45 acre.

The record is somewhat confusing in several respects, not the least of which is that the parties in their briefs agreed that Rafe Blankenship and Curtis Blankenship once owned the entire tract as joint tenants and that Curtis executed a deed to Rafe agreeing to divide the property. It would seem that there would be a deed from Rafe Blankenship to Curtis Blankenship but one was not introduced. However, a deed by which Curtis Blankenship acquired title to the property south of the road from parties by the name of Thomas was introduced into evidence. This deed described the property merely by boundary lines of adjoining owners and did not establish a description that included the disputed tract.

The record contains evidence that Rafe Blankenship and his wife had record title to the disputed .45 acre and that unless barred by some limitation or adverse possession, they would be entitled to prevail as to that particular piece of land. The defense interposed by defendants is adverse possession, and the record reveals that the adverse possession would be without color of title, inasmuch as the boundary line deed introduced by Curtis for the title source does not appear to include the disputed acreage. Although oral agreements as to boundary lines can be used to establish the boundary lines, we do not feel a disputed oral agreement as asserted in this case by defendants can be used as "color of title." The disputed area was not fenced, but was merely bounded by the road on the north.

To constitute adverse possession the adverse claimant must exercise only such use and occupation of the land as the land is susceptible of by its nature and character. *Moffitt v. Meeks*, 29 Tenn.App. 609, 615, 199 S.W.2d 463, 466 (1946); *Derryberry v. Ledford*, 506 S.W.2d 152, 157 (Tenn.App.1973). The acts relied upon must be of such a character as to leave no doubt of claim of ownership by adverse possession and to give notice to the public of the possession and the claim. *Pullen v. Hopkins, Clark & Co.*, 69 Tenn. 741, 747 (1878).

Evidence of adverse possession is strictly construed with every presumption being in favor of the holder of legal title. *Moore v. Brannan*, 42 Tenn.App. 542, 558, 304 S.W.2d 660, 667 (1957). If the possession claimed is not exclusive, this does not amount to an ouster of the holder of legal title, and any joint possession by the legal title holder and another is deemed to be the possession of the holder of the legal title. *See Mercy v. Miller*, 25 Tenn.App. 621, 626, 166 S.W.2d 628, 631 (1942).

This suit was treated by the parties as a boundary line dispute brought pursuant to Tenn.Code Ann. § 16–11–106 (1980):

> *Boundary disputes.*—(a) The chancery court has jurisdiction to hear and determine all cases in which the boundary line or lines of adjoining or contiguous tracts of land is one, or the only question at issue in the case.
>
> (b) In all such cases a complete deraignment of title by the complainant from a state grant or common source of title shall not be required as in ejectment cases, but it shall be sufficient to establish title in complainant, that he prove clearly that he is the true owner of the lands described in his bill.

As pointed out in *Carr v. Wilbanks*, 45 Tenn.App. 372, 324 S.W.2d 786 (1958):

> This [paragraph (b) quoted above] simply means that the complainant must prove that he is the true owner or that he had become entitled to the possession of land adjacent to the boundary which he undertakes to have established,—that is, the

disputed area of land, by clear proof, and in such an action the Chancellor would be confined to a determination by such clear proof,—if he rested his decision upon title, to decree title only to the particular disputed area.

*Id.*, at 386, 324 S.W.2d at 792.

While the defendants testified that they had possession of the property, this was disputed by evidence introduced on behalf of plaintiff, and it appears that the parties virtually agreed that the plaintiff used the property for riding his horses and granted such permission to others for that purpose. Under these circumstances we do not feel that the evidence preponderates against the finding of the Chancellor that the legal title to the designated area was vested in Rafe, and that the defense of adverse possession interposed by the defendants was not sustained. This case was tried by the trial court without a jury and is in this court de novo upon the record with a presumption of correctness of the findings of the court below. T.R.A.P. 13(d). We affirm the holding of the Chancellor as to the .45 acre.

## II.

### NORTHERN DISPUTED TRACT

2. Whether the Chancellor erred in finding that a fence which runs from tree to tree shall prevail over a survey run upon the land according to calls on a deed.

The disputed area is located along the southern boundary of Rafe's land and the northern boundary of some of the defendants' property. The area is about 3.04 acres and extends approximately 1,014 feet east and west and is 86 feet wide at the west end and 132 feet at the east end.

As heretofore noted, both parties hired surveyors, and both surveyors testified at trial. The deed by which Rafe and wife obtained title was placed in evidence and platted by the surveyor which as contended by Rafe established the disputed boundary to be in an area near an old fence. The surveyor for the defendants platted the

property, relying on deeds to the defendants, and testified that the line, as claimed by the defendants, was north of the old fence. An examination of the deeds relied on by defendants' surveyor indicates that the descriptions are defective and will not close. It is also interesting to note that the old fence that coincided with the deed description to Rafe was maintained by defendant Joe Blankenship in order to restrain his cattle. The record does not reflect that anyone established actual adverse possession to any part of this property. The Chancellor found that the deed of Rafe provided legal title to the disputed area and that there was no adverse possession by the defendants to affect this title. We cannot say that the evidence preponderates against this finding, and therefore the finding is affirmed. T.R.A.P. 13(d). Accordingly, the decree of the Chancellor is affirmed as to both disputed properties, and this case is remanded for such other proceedings as necessary.

The costs are adjudged against the appellants.

HIGHERS, J., and SUMMERS, Special Judge, concur.