FILED

11/23/2021

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 22, 2021 Session

**BUTTERCUP RIDGE FARMS, LLC, ET AL. v.
McFALL SOD & SEEDING, LLC, ET AL.**

**Appeal from the Chancery Court for Maury County
No. 19-293   Christopher V. Sockwell, Judge[1]**

_____

**No. M2021-00457-COA-R3-CV**

_____

This is an action to quiet title to a strip of land used as an ingress/egress for property perpendicular to the land at issue.  The trial court found in favor of the plaintiff.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II and KRISTI M. DAVIS, JJ., joined.

L. Bruce Peden, Columbia, Tennessee, for the appellants, McFall Sod & Seeding, LLC and Jackie McFall.

T. Jake Wolaver, Columbia, Tennessee, for the appellees, Buttercup Ridge Farms, LLC and Stephen Brown.

**OPINION**

**I.  BACKGROUND**

In June 2019, Stephen Brown, owner of Buttercup Ridge Farms, LLC, ("Buttercup" or "Plaintiff"), filed this action to quiet title to a dirt lane that connected his family farm to a public right of way.[2]  The lane, located in Maury County, Tennessee, travels northward

---

[1] Sitting by interchange.

[2] Plaintiff transferred title of his property to Buttercup and later moved to amend the

from State Highway 412 between two properties owned by Jackie McFall and McFall Sod & Seeding, LLC (collectively "Defendants") to the Buttercup property as illustrated below:



Plaintiff sought ownership of the lane based upon adverse possession, with alternative claims of easement by prescription or easement by necessity based upon the landlocked nature of the Buttercup property.

Plaintiff acquired his interest in Buttercup from Seth Brown, who acquired the property in 1973. The original deed listed the property as 78 acres and made no mention of the lane. The lane was also not included in the property description. Seth Brown, in his last will and testament, described the property as follows:

> The Farm being 80 acres more or less located 3.8 miles west of Columbia State Community College off U.S. 412 West by a lane extending 3000 feet north to the beginning of said property.

The McFall property was partially acquired in 1996 (448 acres) with the remainder of acres gained in 2001 (90.1 acres). The lane was not mentioned in the deeds. However, the tax maps, dating from 1997 until 2020, depicted the lane as part of the McFall property.

---

complaint to add Buttercup as a plaintiff.

Plaintiff agreed that he had not paid taxes for the lane; however, tax records established that taxes were paid for in excess of 80 acres, not just the 78 acres noted in the deed. According to a 2016 property assessment, it was unclear as to whether anyone had paid taxes specified for the lane.[3] A 2019 survey of the Buttercup property appeared to include the lane as part of the taxed property and listed the acreage as 80.28 acres.

Defendants argued, inter alia, that Plaintiff was prohibited from bringing the action based upon Tennessee Code Annotated section 28-2-110(a), which provides as follows:

> Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom such person claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state.

The case proceeded to a hearing, at which testimony was elicited establishing that Seth Brown installed a water line running down the center of the lane to the Buttercup barn in the 1970s. He also kept the lane itself gated and locked. He provided Defendants with a key when they purchased their properties. Defendants used the lane occasionally to cross between their properties and to transport cows. However, Seth Brown prohibited Defendants' placement of a gate across the lane, and at some point, Defendants leased the Buttercup property from Seth Brown for the benefit of their cattle. When the lease expired, Seth Brown objected to further use of the water line running on the lane. Plaintiff later posted "no trespassing signs" and installed video surveillance.

Following the hearing, the trial court ruled in favor of Plaintiff, finding that Seth Brown exerted exclusive control over the lane during his ownership of the land adjacent to the lane. Citing *Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d 366, 381 (Tenn. 2007),[4] the court further found that the failure to pay taxes did not bar recovery when the area at issue was relatively small and contiguous to adjacent property that was properly assessed and taxed by the party claiming ownership. The court also noted that Defendants failed to prove that Plaintiff had not paid taxes for the lane when he was taxed for 80 acres of land, not just the 78 acres provided for in the original deed.

---

[3] The property assessor explained at the hearing that taxes are based upon the acreage as recorded in the deed, not the tax map.

[4] In *Cumulus*, our Supreme Court held that Section 28-2-110 does not bar an adverse possession claim "when the tracts are contiguous, a relatively small area is at issue, and the adjacent owners making claims of ownership have paid their respective real estate taxes." 226 S.W.3d 366, 381.

Defendants then moved to amend the court's order to clarify a discrepancy between the Buttercup deed and the 2019 property survey. Defendants claimed that tract-plotting software calculations of the 2019 survey demonstrated that the land without the lane was 80.28 acres, not the 78 acres as reflected in the deed. The court accepted this proof and issued specific findings (1) that the lane was not included in the survey or in the boundaries of the 1973 deed; (2) that the tax maps show the lane as part of Defendants' property; and (3) that Plaintiff only paid taxes for the property included within the 1973 deed. The court maintained its final ruling in favor of Plaintiff and reaffirmed all other findings and the rationale in support of said findings. This timely appeal followed.

## II. ISSUES

A.      Whether Section 28-2-110(a) barred Plaintiff's quiet title action.

B.      Whether the trial court erred in finding that Plaintiff had proven ownership of the lane by adverse possession.

## III. STANDARD OF REVIEW

We review a non-jury case de novo upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005). The presumption of correctness applies only to findings of fact and not to conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011). This is because the trial court alone had the opportunity to observe the appearance and demeanor of the witnesses. *Royal Ins. Co. v. Alliance Ins. Co.*, 690 S.W.2d 541, 543 (Tenn. Ct. App. 1985).

# IV. DISCUSSION

## A. & B.

The parties agree and the record reflects that Plaintiff has not paid taxes on the lane and that the lane was not included in the 1973 deed. The Tennessee Code contains the following provision that prevents a person who has not paid taxes on property from bringing an action to claim ownership of the property at issue:

> Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom such person claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state.

Tenn. Code Ann. § 28-2-110(a). Parties relying on section 28-2-110 "must clearly show that the other party failed to pay the taxes." *Bone v. Loggins*, 652 S.W.2d 758, 761 (Tenn. Ct. App. 1982).

Citing *Cumulus*, Plaintiff argues that the Tennessee Supreme Court has significantly limited the application of this statute when adjacent landowners have a dispute as to the location of a boundary line. *Cumulus*, provides, in pertinent part, as follows:

> Tennessee Code Annotated section 28-2-110 should not serve as a bar to a claim of adverse possession when the tracts are contiguous, a relatively small area is at issue, and the adjacent owners making claims of ownership have paid their respective real estate taxes. To hold otherwise would effectively eliminate the adverse possession of any part of an adjoining tract. As a matter of policy, possession of property for twenty or more years accompanied by all other elements of the doctrine is a basis for ownership.

226 S.W.3d at 381. Here, the lane, described as approximately 1 to 2 acres in size, is relatively small in comparison to the adjacent plots, namely Plaintiff's 80 acres and Defendant's more than 500 acres. Defendants have not claimed that Plaintiff failed to pay taxes on his actual acreage reflected in the deed, leaving one area of contention, namely whether the lane is contiguous with Plaintiff's tract. Defendants suggest that this court's application of *Cumulus* should be limited to cases in which the properties actually overlap.

We disagree. The Court in *Cumulus* did not limit its application in such a manner. Instead, the Court maintained that the tracts must be contiguous and further clarified that the exception was for the benefit of those who adversely possessed an adjoining tract to

their owned property.  *Id.*  The Court did not define the term "contiguous."  The following definitions are easily found in Merriam-Webster's Collegiate Dictionary:

> (1) being in actual contact: touching along a boundary or at a point[;] (2) of angles: adjacent[;] (3) next or near in time or sequence[; and] (4) touching or connected throughout in an unbroken sequence[.]"

Merriam-Webster Online Dictionary (2021) (www.merriamwebster.com (derived from Merriam-Webster's Collegiate Dictionary 11th ed.)).  Here, the lane ran between Defendants' properties and ended at a point adjacent with Plaintiff's property.  We hold that the exception found in *Cumulus* applies, and therefore, we affirm the trial court's holding that the failure to pay taxes on the approximate 2-acre lane was not a bar to recovery in this quiet title action.

Next, Defendants claim that Plaintiff cannot succeed on his claim of adverse possession when Plaintiff and his predecessor did not exclusively possess the lane or indicate a claim of ownership.  In such cases, our Supreme Court has instructed:

> In order to establish adverse possession under [the common law] theory, or in any statutorily based claim, the possession must have been exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time.  Adverse possession is, of course, a question of fact.  The burden of proof is on the individual claiming ownership by adverse possession and the quality of the evidence must be clear and convincing.  The actual owner must either have knowledge of the adverse possession, or the possession must be so open and notorious to imply a presumption of that fact.  When an adverse possessor holds the land for a period of twenty years, even absent any assurance or color of title, the title vests in that possessor.

*Cumulus*, 226 S.W.3d at 377 (internal citations omitted).  Adverse possession does not require proof of "ill will or actual enmity, but merely means that the party claims to hold the possession as his, against the claims of any other." *Hightower v. Pendergrass*, 662 S.W.2d 932, 937 (Tenn. 1983).  Here, the record clearly established that Plaintiff possessed and used the property as his own in an exclusive, actual, adverse, continuous, open, and notorious manner.  Through his predecessor, he likewise excluded Defendants by the refusal to permit further use of the water line or the raising of an additional gate owned by Defendants.  Plaintiff's act of allowing passage through the gate does not negate the exclusivity of the possession when the gate was raised by his predecessor and passage was only permitted by a key or combination provided by him.  With all of the above considerations in mind, we affirm the decision of the trial court.

## V. CONCLUSION

For the reasons stated above, we affirm the decision of the trial court. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellants, McFall Sod & Seeding, LLC and Jackie McFall.

_____
JOHN W. MCCLARTY, JUDGE